UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NEKEISHA SMITH o/b/o D.R.

    Plaintiff,

    v.         **REPORT AND RECOMMENDATION**
                 **10-CV-00053 (GTS)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

    Defendant,

### I. Introduction

In June 2006, Plaintiff Ms. Nekeisha Smith, on behalf of her minor child, D.R., filed an application for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff alleges D.R. has been disabled since June 1, 2006, due to attention deficit hyperactivity disorder ("ADHD"),[1] oppositional defiant disorder ("ODD"),[2] a learning disorder, depression, asthma, and a sleep disorder. The Commissioner of Social Security ("Commissioner") denied Plaintiff's application.

Plaintiff, through her attorney, Louise M. Tarantino, commenced this action on January 14, 2010, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

---

[1] "[A] childhood mental disorder characterized by inattention . . ., by hyperactivity and impulsivity . . ., or by both types of behavior." Dorland's Illustrated Medical Dictionary, 555 (31st ed. 2007).
[2] "[A] type of disruptive behavior disorder characterized by a recurrent pattern of defiant, hostile, disobedient, and negativistic behavior directed towards those in authority, deliberately annoying others, arguing, spitefulness, and vindictiveness that occur much more frequently than would be expected on the basis of age and developmental stage." Dorland's at 558.

On October 4, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II.     Background

The relevant procedural history may be summarized as follows: Plaintiff, on behalf of her minor child, D.R., initially applied for SSI on June 5, 2006, alleging disability beginning on June 1, 2006 (R. at 55-57).[3] Plaintiff alleged disability due to ADHD, ODD, a learning disorder, depression, asthma, and a sleep disorder. The application was denied (R. at 25-28). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R. at 29). A hearing was held in Albany, New York, on February 17, 2009, before ALJ Robert Wright (R. at 327-48). Both Plaintiff and D.R., represented by counsel, appeared and testified (R. at 330-47). On March 16, 2009, ALJ Wright issued a decision finding D.R. not disabled (R. at 11-22). Plaintiff filed a request for review of that decision (R. at 321). The ALJ's decision became the Commissioner's final decision on November 19, 2009, when the Appeals Council denied Plaintiff's request for review (R. at 3-7).

Plaintiff, through counsel, timely commenced this action on January 14, 2010. (Docket No. 1). The Commissioner interposed an Answer on May 17, 2010. (Docket No. 8). Plaintiff filed a supporting Brief on July 8, 2010. (Docket No. 10). The Commissioner filed a Brief in opposition on September 7, 2010. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both

---

[3] Citations to "R" refer to the Administrative Transcript. (Docket No. 7).

parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings for failure to properly evaluate the medical and non-medical opinions.

### III.   Discussion

#### A.   Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion

---

[4] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

A child is deemed disabled under the Act if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Commissioner has established the following three-step sequential evaluation to determine whether a child is disabled: first, the ALJ must determine whether the child has engaged in "substantial gainful activity." 20 C.F.R. §416.924(a), (b). If the child has engaged in substantial gainful activity he will be found not disabled. Id. If not, the analysis will continue. At step two, the ALJ must determine whether the child "ha[s] a medically determinable impairment(s) that is severe."

4

§416.924(c). "If [the child] do[es] not have a medically determinable impairment, or [the child's] impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, [the ALJ] will find that [the child] do[es] not have a severe impairment(s) and are, therefore, not disabled." Id. Finally, at step three, the ALJ must determine whether the child "meet[s], medically equal[s], or functionally equal[s] the listings." § 416.924(d). To functionally equal the Listings, the ALJ must evaluate six domains: "[a]cquiring and using information; [a]ttending and completing tasks; [i]nteracting and relating with others; [m]oving about and manipulating objections; [c]aring for yourself; and, [h]ealth and physical well-being." § 416.926a(b)(1)(i)-(vi). A child's "impairment(s) is of listing-level severity if [the child] ha[s] 'marked' limitations in two of the domains . . ., or an 'extreme' limitation in one domain." § 416.92a(d).

  **B.** **Analysis**

    **1. The Commissioner's Decision**

The ALJ made the following findings with regard to factual information as well as the three-step process set forth above: the ALJ first found that D.R. was a school-aged child at the time of his application date and was an adolescent at the time of his decision (R. at 14). The ALJ then found that D.R. had not engaged in substantial gainful activity at any point relevant to his decision. Id. At step two, the ALJ found D.R.'s ADHD, depression, and a learning disability to be severe impairments. Id. D.R.'s "sleep disturbances and asthma" were found to be non-severe impairments. Id. The ALJ next found that D.R.'s impairments did not meet or medically equal a Listed impairment. Id. "[T]he statements concerning the intensity, persistence and limiting effects of [D.R.'s]

symptoms [we]re[found to be] not credible to the extent they [we]re inconsistent with finding [D.R.] d[id] not have an impairment or combination of impairments that functionally equal[ed] the listings . . . ." (R. at 15). D.R.'s impairments were found not to functionally meet the Listings (R. at 14). Specifically, the ALJ found that D.R. had less than a marked limitation in the following domains: acquiring and using information, attending and completing tasks, and interacting and relating with others (R. at 16- 19). The ALJ found that D.R. had no limitations in the remaining three domains (R. at 20-22). Because D.R. did not either meet or functionally equal the Listings, the ALJ found that D.R. was not disabled as of June 5, 2006, his application date (R. at 22).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in evaluating the medical and non-medical opinions from three sources; b) the ALJ erred at various other points throughout the sequential evaluation; and c) good cause exists to reopen Plaintiff's earlier application. The Court will discuss each argument in turn:

### a) The ALJ Erred in Evaluating the Medical and Non-Medical Opinions

Plaintiff argues that the ALJ erred in weighing the opinions from i) Dr. Annette Payne, the Social Security Administration ("SSA") examining psychologist; ii) D.R.'s sixth grade teacher; and iii) Dr. Rita Petro, the SSA non-examining review psychologist. Plaintiff's Brief, pp. 20-24. Plaintiff further contends that the ALJ erred in failing to re-contact Dr. Payne and D.R.'s teacher. Plaintiff's Brief, pp. 20-23.

ALJs are instructed to consider the following factors to determine the appropriate weight to afford a medical opinion: (1) whether the source examined the claimant; (2) whether the source had a treating relationship with the claimant; (3) the supporting evidence submitted by the source; (4) the consistency of the opinion with the record; (5) whether the source is a specialist; and (6) any other factors "which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d)(1)-(6). These same factors should also be applied when weighing an opinion from an "other source," such as a teacher. Social Security Ruling 06-03p, 2006 WL 2329939, at *5 (S.S.A) [hereinafter SSR 06-03p].

In addition, it is well settled that the ALJ has an affirmative duty to develop the record. Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). This duty exists regardless of whether Plaintiff continued *pro se*, or, in this case, was represented by counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). The Court finds that the ALJ erred in evaluating the opinions from Dr. Payne and D.R.'s sixth grade teacher.

For the following reasons, the Court finds that the ALJ erred in evaluating the opinions from Dr. Payne, D.R.'s sixth grade teacher, and Dr. Petro. The Court further finds that the ALJ erred in failing to request that Dr. Payne clarify her opinions.

### i. The ALJ Erred in Evaluating Dr. Payne's Opinions

Plaintiff argues that the ALJ erred in discounting the opinions Dr. Payne, the SSA examining psychologist. Plaintiff's Brief, pp. 20-21. Plaintiff further contends that the ALJ erred in failing to re-contact Dr. Payne. Id.

7

Dr. Payne completed both an intelligence evaluation and a psychiatric examination on August 7, 2006 (R. at 195-04). D.R.'s IQ scores[5] "place[d] him in the low-average range of intelligence" (R. at 198). Dr. Payne diagnosed D.R. with ADHD, a depressive disorder not otherwise specified ("NOS"), and ODD (R. at 199, 203). Dr. Payne opined that D.R. "would have difficulties" in the following areas: "following, and understanding age-appropriate directions;" "completing age-appropriate tasks;" "maintaining appropriate social behavior;" "responding appropriately to changes in [the] environment;" "learning in accordance with cognitive functioning, asking questions, and requesting assistance in an age-appropriate manner;" and "interacting adequately with peers and adults" (R. at 198, 203).

The ALJ failed to state the weight afforded to Dr. Payne's opinions and also failed to consider any relevant factors when discussing her opinions. This error necessitates remand. See 20 C.F.R. § 404.1527(f)(2)(ii) ("[u]nless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant"); SSR 96-6p, 1996 WL 374180 at *2 (S.S.A.) ( ALJs "are not bound by findings made by State agency . . . psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions").

Despite failing to properly weigh Dr. Payne's opinions, it is clear that the ALJ believed them to be vague and therefore unhelpful in determining D.R.'s functioning. Specifically, the ALJ noted that despite "list[ing] a number of limitations, [Dr. Payne]

---

[5] D.R. had a verbal comprehension index score of 81, a perceptual reasoning index score of 100, a working memory index score of 68, a processing speed index score of 83, and a full scale IQ of 80 (R. at 197-98).

8

failed to specify the degree of those limitations" (R. at 16). However, the ALJ made no attempt to clarify Dr. Payne's opinions. According to the Regulations, "[f]f the report is inadequate or incomplete, [the Commissioner] will contact the medical source who performed the [SSA] consultative examination, give an explanation of [the Commissioner's] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b). Here, the ALJ made no effort to re-contact Dr. Payne to request that she provide a more detailed opinion.

The Court notes that because Dr. Payne was the sole examining physician to provide an opinion of D.R.'s functioning despite his impairments, her opinions are particularly probative. 20 C.F.R. § 404.1527(d)(1) ("Generally, [the ALJ] will give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]."). Thus, the Court finds that the ALJ erred in discounting Dr. Payne's opinions without first requesting that she provide a more detailed description of D.R.'s functioning. See 20 C.F.R. § 404.1519p(b); Foster v. Astrue, 2009 WL 2176639, at *3 (D.Colo. Jul. 21, 2009) (internal citations removed) ("If the ALJ questioned whether [the consultative examiners] had accounted for symptom magnification in rendering their opinions, it was his duty to recontact them for further clarification on that point."); McMillan v. Astrue, 2009 WL 651144, at *4 (M.D.Fla. Mar. 12, 2009) (quoting 20 C.F.R. §§ 404.1519p(b) (416.919p(b)) ("If . . . the ALJ perceived [that] the 'report [was] inadequate or incomplete,' he should have recontacted the [consultative] source and requested 'the missing information or' a revision.").

Consequently, the Court finds that the ALJ erred in failing to consider any of the relevant factors and also in dismissing Dr. Payne's opinions without first requesting that she provide a more detailed report.

### ii. The ALJ Failed to Properly Evaluate the Opinions from D.R.'s Sixth Grade Teacher

Plaintiff argues that the ALJ erred in discounting the opinions from D.R.'s sixth grade teacher. Plaintiff's Brief, pp. 22-23. Plaintiff further contends that the ALJ erred in failing to re-contact the teacher to request that she identify herself. Id.

D.R.'s sixth grade teacher completed a questionnaire, after having known D.R. for seven weeks[6] (R. at 312-19). The report was not signed and no date was given.[7] The teacher stated that D.R.'s functioning in the acquiring and using information domain ranged from an obvious problem to a very serious problem (R. at 313).  D.R.'s functioning in both the attending and completing tasks domain and the interacting and relating with others domain ranged from a slight problem to a serious problem (R. at 314-15). The teacher found that D.R. had no problems in the moving about and manipulating objects (R. at 316). D.R.'s functioning ranged from no problem to a very serious problem in the caring for himself domain (R. at 317). The teacher also noted

---

[6] Based on other evidence of record, it appears D.R. was in sixth grade during the 2007-2008 school year. See (R. at 277) (a behavioral plan dated October 4, 2007, indicates D.R. was in sixth grade at the time); (R. at 293) (a recommendation for a smaller classroom was made on February 6, 2008, when D.R. was in sixth grade).

[7] As argued by Plaintiff, it is likely the report was completed by Ms. Amiee Todd in May 2008. Plaintiff's Brief, p. 15, n. 21. The teacher who completed the assessment indicated that she been teaching D.R. for seven weeks in an "8:1:1" classroom, and she saw him all day (R. at 312). In February 2008, D.R.'s school noted that "[d]espite the placement in a self-contained classroom [D.R.] continue[d] to have difficulty maintaining appropriate behavior" and recommended placement in an "8:1:1 [classroom] or smaller" (R. at 293). In May 2008, Ms. Todd was noted to be D.R.'s special education teacher (R. at 266). At that time,  D.R. "ha[d] been in [the] 8-1-1 classroom for about seven weeks." Id.

that D.R. "lack[ed] the social and emotional control needed to be successful in regular education" Id.

The ALJ afforded "little weight" to the opinions from D.R.'s sixth grade teacher because she was not a physician, was not an expert in Social Security Law, and her findings were "inconsistent with statements made by the claimant's therapist, school psychologist, and other teachers." Id. The Court finds that the ALJ failed to adequately set forth his reasoning and failed to consider all relevant factors.

Although a teacher is not an acceptable medical source, and not an expert in Social Security law, teachers are "valuable sources of evidence for assessing impairment severity and functioning. Often, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." SSR 06-03p, 2006 WL 2329939, at *3. Furthermore, "under certain circumstances" a teacher's opinion may "properly be determined to outweigh the opinion from a medical source, including a treating source." Id. at *6. Thus, a teacher's opinion cannot be dismissed solely because she is not an acceptable medical source, and instead the ALJ must consider all the relevant factors. See SSR 06-03p, 2006 WL 2329939, at *4-5 (listing the factors ALJs should consider when weighing opinions from "other sources," such as a teacher). Here, the ALJ failed to properly evaluate the factors.

The ALJ was correct to consider the consistency of the teacher's opinions to the record as a whole. SSR 06-03p, 2006 WL 2329939, at *4 (in weighing an opinion from an "other source," the ALJ should consider "[h]ow consistent the opinion is with other evidence"). However, the ALJ failed to support his broad finding that the opinions from

11

D.R.'s teacher were "inconsistent with statements made by the claimant's therapist, school psychologist, and other teachers" (R. at 317). It is therefore unclear what "statements" from D.R.'s teacher the ALJ found to be inconsistent with D.R.'s "therapist, school psychologist, and other teachers." Notably, none of these sources provided an assessment of D.R.'s functioning in the six domains. By simply making a conclusory finding without any supporting evidence, the ALJ has frustrated the Court's ability to review his decision in order to determine whether it is supported by substantial evidence. See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (internal citations removed) (requiring the Commissioner to set forth "the crucial factors in [his] determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence"). The Court acknowledges that at various other points in his decision, the ALJ noted statements made by D.R.'s therapist, school psychologist, and various other teachers that could be interpreted as inconsistent with the findings from D.R.'s sixth grade teacher (R. at 15-19). For example, when assessing credibility, the ALJ noted a teacher's statement[8] to the effect "that while [D.R.] d[id] have difficulty with regular level work, he [wa]s able to work well in a small group setting and put[] forth good effort in his work and group activities" (R. at 15). If this is an example of the statements to which the ALJ is referring, he must on remand articulate with more clarity the manner in which the alleged inconsistencies support his conclusions.

      Furthermore, D.R.'s teacher taught D.R. for seven weeks prior to completing her assessment (R. at 312). Had the ALJ properly consider all the relevant factors, this

---

[8] The ALJ failed to identify the teacher (R. at 15).

would in her favor have tended to support the teacher's conclusions concerning the condition of the Plaintiff. SSR 06-03p, 2006 WL 2329939, at *4 (the ALJ should consider "[h]ow long the source has known and how frequently the source has seen the individual"). Moreover, while Dr. Payne's opinions were admittedly vague, her findings of "difficulties" in numerous areas were consistent with and corroborate the teacher's opinion that D.R. was limited in several functional domains. These consistencies would also have weighed in the teacher's favor. 20 C.F.R. § 404.1527(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Plaintiff's final argument, in regards to D.R.'s sixth grade teacher, is that the ALJ erred in failing to request that the teacher be identified. Plaintiff's Brief, pp. 22-23. As noted above, after a careful review of the record, the Court finds it likely that the report was completed by Ms. Todd and counsel for Plaintiff was given ample opportunity to argue that the teacher was Ms. Todd.  It is unclear from the record that the absence of identity affected the evaluation of the Plaintiff's teacher.  However, on remand, the ALJ may wish to re-contact D.R.'s school to ensure that she was indeed the teacher who completed the assessment.

Therefore, on remand, the ALJ should consider all relevant factors in evaluating the opinions from D.R.'s sixth grade teacher.

### iii. The ALJ Erred Failed to Properly Evaluate Dr. Petro's Opinions

Plaintiff argues that the ALJ erred in affording the greatest weight to the opinions from Dr. Petro, the SSA non-examining review psychologist. Plaintiff's Brief, p. 24.

Dr. Petro completed a review of D.R.'s record on August 18, 2006 (R. at 205-11). She opined that D.R. had a less than marked limitation in the following domains: acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself (R. at 207-09). Dr. Petro also found that D.R. had no limitation in the remaining two domains (R. at 209).

The ALJ afforded Dr. Petro's opinions "great weight" (R. at 16). No assessment was afforded a greater weight. The ALJ reasoned that that Dr. Petro's "opinion regarding the extent and scope of the claimant's limitations [wa]s consistent with statements made by the claimant's therapist and school psychologist and [wa]s not contradicted by any examining medical source of record." Id.

The Court acknowledges that "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." Social Security Ruling 96-6p, 1996 WL 374180 at *3 (S.S.A.) [hereinafter SSR 96-6p]. However, "[t]he general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability." Vargas v. Sullivan, 898 F.2d 293, 295-96 (2d Cir. 1990) (internal citations and quotations removed); see also Bennett v. Astrue, 2009 WL 1035106, at *11 (N.D.N.Y. Apr. 17, 2009) (internal citations removed) ("A non-examining source's opinion, including the opinions of state agency medical consultants and medical experts, will be given less weight than an examining source's opinion.").

Dr. Petro completed his assessment of D.R.'s functioning in August 2006. Thus, Dr. Petro was unable to review approximately one and a half years of the record. This

further diminishes the probative value of his opinions. During that time period, probative evidence of D.R.'s functioning was submitted. Most notably, this included the functional assessment from D.R.'s sixth grade teacher (R. at 312-19). Other probative evidence included numerous disciplinary reports, such as: yelling while on the school bus (R. at 300); swearing at his teacher (R. at 301, 302); "sticking himself with nails" (R. at 302); telling his teacher to "shut up" (R. at 306); and "knock[ing] into [his teacher] with his shoulder" (R. at 311). Also, a functional behavior assessment was completed by D.R.'s school on October 4, 2007 (R. at 279-81). The school noted several problems, including: a failure to follow teacher directions and rules, talking and/or yelling without permission, leaving the classroom without permission, speaking to others in a disrespectful manner, a low tolerance for frustration, poor anger management and social interaction skills, immature coping skills, and difficulties sustaining concentration (R. at 279). D.R. also experienced a "panic attack" on November 2007 and was taken to the hospital (R. at 239). D.R. had a "less severe 'panic attack'" the following month. Id. The school noted that "symptoms included diff[iculty] breathing, chest pain [and] vomiting." Id. This evidence would most likely have impacted Dr. Petro's opinions.

      Furthermore, in affording Dr. Petro's opinions the greatest weight, the ALJ reasoned that that her "opinion regarding the extent and scope of the claimant's limitations [wa]s consistent with statements made by the claimant's therapist and school psychologist and [wa]s not contradicted by any examining medical source of record" (R. at 16). The ALJ further noted that Dr. Petro's opinions were not contradicted by Dr. Payne's opinions, because "[a]lthough Dr. Payne listed a number of limitations, she failed to specify the degree of those limitations." Id. However, as with the ALJ's analysis

15

of the opinions from D.R.'s sixth grade teacher, the ALJ again failed to include any evidence to support his contention that Dr. Petro's opinions were "consistent with statements made by the claimant's therapist and school psychologist" (R. at 15). As stated above, by failing to indicate what statements were consistent, the ALJ has frustrated the Court's ability to review his decision to determine whether it is supported by substantial evidence. Ferraris, 728 F.2d at 587.

Based on the foregoing, the Court recommends remand to allow the ALJ an opportunity to reevaluate the opinions Dr. Petro, Dr. Payne, and D.R.'s sixth grade teacher. Furthermore, if Dr. Payne's opinions are again found to be vague, the ALJ must re-contact her to request clarification. Finally, the ALJ may wish to re-contact D.R.'s sixth grade school to request the identification of his sixth grade.

### b) The ALJ's Remaining Findings Throughout the Sequential Evaluation are Necessarily Flawed

Plaintiff argues that the ALJ erred in failing to find D.R. met Listing 112.11. Plaintiff's Brief, pp. 19-26. In the alternative, Plaintiff contends that D.R. functionally met the Listings due to marked limitations in the following domains: acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself. Plaintiff's Brief, pp. 26-30.

Because the ALJ erred in failing to properly evaluate the medical and non-medical opinions of record, the ALJ's remaining findings throughout the sequential evaluation are necessarily flawed.

### c) On Remand, Plaintiff Should Request that D.R.'s Previous Application be Reopened

Plaintiff's final argument is that D.R.'s previous SSI application should be reopened. Plaintiff's Brief, pp. 2, n. 2, 9.

A finding of not disabled may be reopened "[w]ithin two years of the date of the notice of the initial determination if [the Commissioner] find[s] good cause." 20 C.F.R. § 416.1488(b). Good cause will be found if "new and material evidence is furnished." 20 C.F.R. § 416.1489(a)(1). The record indicates that Plaintiff, on behalf of D.R., filed an application for SSI on June 22, 2004, which was denied on September 29, 2004 (R. at 58). Plaintiff contends that new evidence submitted in connection with her June 5, 2006 application, met this good cause requirement. Plaintiff's Brief, p. 2, n. 2.

However, the Court could not locate, nor does Plaintiff cite to, any portion of the record indicating that Plaintiff requested that D.R.'s previous application be reopened. Furthermore, even assuming *arguendo* that Plaintiff did request a reopening which was subsequently denied, "the denial of a request to invoke regulatory authority to reopen a final determination is not a decision to which section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1994), provides district court jurisdiction." Stieberger v. Apfel, 134 F.3d 37, 39 (2d Cir. 1997) (citing Califano v. Sanders, 430 U.S. 99, 108 (1977)).

"Nevertheless, federal courts may review the Commissioner's decision not to reopen a disability application in two circumstances: where the Commissioner has constructively reopened the case and where the claimant has been denied due process." Byam v. Barnhart, 336 F.3d 172, 180 (2d Cir. 2003). If jurisdiction exists, the Court may issue "a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g) (sentence four). Plaintiff has failed to articulate any argument for why this Court has jurisdiction and the Court has found none.

### IV.     Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Based on the foregoing the Court recommends remand for failure to properly evaluate the medical and non-medical opinions of record.

### V.     Conclusion

For the foregoing reasons, the Court finds that a remand is necessary and warranted. Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully Submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED: Syracuse, New York
January 20, 2011

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);  *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);  *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED

Victor E. Bianchini
United States Magistrate Judge

DATED:    Syracuse, New York
January 20, 2011